UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY J. DREW,

                                  Plaintiff,        Case # 18-CV-6847-FPG

v.                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                  Defendant.
_____

**INTRODUCTION**

On May 15, 2015, Plaintiff Gregory Drew protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") alleging disability beginning September 30, 2012. Tr.[1] 18. After the Social Security Administration ("SSA") denied his claim, Tr. 73-84, Plaintiff appeared, with counsel, at a hearing on July 25, 2017 before Administrative Law Judge John Costello (the "ALJ"). Tr. 33-60. On October 2, 2017, the ALJ issued an unfavorable decision. Tr. 15-29. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-3. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 20. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g)

1

## LEGAL STANDARD

### I.  District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.  Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

I. **Plaintiff's Impairment**

Plaintiff was a firefighter for nearly fifteen years before his injury prevented him from continuing to work. Tr. 45. Plaintiff's initial injury occurred in 2009 when, while on the job, he slipped on an ice-covered embankment and grabbed the firetruck, twisting his back and suffering a rotational injury to the lumbar spine. Tr. 253. Plaintiff's injury resulted in radiating pain and numbness to his legs. Tr. 45-46, 253. Plaintiff continued to work, although the injury lingered until the pain eventually became "horrible" sometime in 2012. Tr. 245. Plaintiff, who was once able to carry a man weighing approximately 200 pounds out of a building, became wheelchair bound. Tr. 41, 47. In 2013, Plaintiff underwent a right L5-S1 lumbar hemilaminectomy and posterolateral foraminotomy. Tr. 251. This surgery allowed Plaintiff to walk again, though he still required a walker or a cane for assistance. Tr. 47. This was followed by an L4-L5 lumbar hemilaminectomy, posterolateral foraminotomy, decompression L4-L5 for lumbar stenosis and nerve compression in 2014. Tr. 240-41. It was not until this second surgery that Plaintiff was able to move around mostly unassisted. Tr. 47. Plaintiff eventually received a spinal cord stimulator implant ("SCS") to manage the pain in 2015. Tr. 413-14. However, Plaintiff testified that the SCS brought the pain only to a "more tolerable" level and allowed him to be on his feet for longer periods of time but still left him unable to stand in the same constant position or else numbness would set in. Tr. 48-49. Driving long periods is difficult for Plaintiff; he experiences "[n]umbing symptoms sitting in one position for a longer period of time" which then requires him to pace for ten minutes to get sensation back into his leg and "relieve[] that numbing and tingling in [his] foot." Tr. 45-46.

Plaintiff has become more active as recommended by his doctor to help his back, taking up activities such as golf and swimming, though he is still limited in doing so. Tr. 51-52. Plaintiff is

3

also limited in basic tasks of everyday living such as cleaning and laundry, testifying he needs help from his wife to accomplish routine tasks. Tr. 52.

**II.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was severe. Tr. 21. At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal the Listings criteria. Tr. 22. Next, the ALJ determined that Plaintiff retains the RFC to perform light work as defined by 20 CFR § 404.1567(b) except that he will need to change positions briefly every half hour. Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a firefighter. Tr. 27. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, such as a laundry sorter and photocopy machine operator, and therefore the ALJ concluded that Plaintiff is not disabled. Tr. 28-29.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's testimony, the medical evidence, and medical source opinions. The ALJ gave "limited weight" to consultative examiner Carolyn Ling, M.D.'s opinion because she only examined Plaintiff once and did not have the opportunity to review additional evidence. Tr. 26. The ALJ also gave "little weight" to Hemant Kalia, M.D. and Kerry Moore, N.P.'s determination that Plaintiff was 66.5% disabled because it was inconsistent with Plaintiff's report of a 75% improvement in leg pain. Tr. 26. The determination was also based on state Worker's Compensation guidelines, rendering it of "little probative value." Tr. 26. The ALJ gave "limited weight" to N.P. Moore and Bruce Barron, M.D.'s disability rating for the same reason. Tr. 26. The ALJ gave Dr. Kalia's statement that "the claimant

4

is unlikely to go back to his previous work" "some weight" because, while consistent with the ALJ's opinion, findings of disability are reserved for the Commissioner. Tr. 26. For the same reason, the ALJ assigned "little weight" to "a passing statement that the claimant is disabled from work." Tr. 26.

Plaintiff advances four distinct arguments in support of remand: (1) The ALJ failed to properly consider the longitudinal history of Plaintiff's low back impairment, particularly during the period between the disability onset date of September 30, 2012 and the May 29, 2015 implantation of the SCS; (2) the ALJ failed to properly weigh the opinion of the Administration's own consultative examining physician, who described functional limitations inconsistent with, and far more limited than, those adopted by the ALJ; (3) the rejection of the only medical opinion in the record leaves a significant gap and the ALJ improperly assessed the bare medical findings; and (4) the Commissioner failed to provide any basis for the Appeals Council's determination that the evidence from WorkFit Medical Plaintiff submitted "does not show a reasonable probability that it would change the outcome of the decision." ECF No. 11-1 at 6-16. The Court agrees with Plaintiff's second and third arguments and finds that, having erroneously rejected the opinion of the consultative examiner, the ALJ improperly assessed the bare medical findings and mischaracterized Plaintiff's daily activities. Therefore, remand is required on those grounds, and the Court does not reach Plaintiff's other arguments.

### III.   Analysis

An ALJ is "prohibited from 'playing doctor,'" meaning that it is improper for the ALJ to substitute his own judgement for that of a "competent medical opinion." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 292 (W.D.N.Y. 2018) (quoting *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12, (D. Conn. Dec. 1, 2017)). Here, the ALJ erred by both

discounting Dr. Ling's opinion and then failing to further develop the record. Because Dr. Ling's opinion was the only one in the record addressing Plaintiff's exertional limitations, the ALJ "created an evidentiary gap in the record requiring remand" by discounting the opinion and failing to seek out another functional capacity evaluation. *Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009-FPG, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019). Moreover, this gap makes it unclear what evidence the ALJ's RFC determination is based on, besides a mischaracterization of Plaintiff's testimony. *See id.* ("Even though the Court agrees with the reasons why [the] ALJ chose to afford limited weight to all four medical opinions, it cannot tell under these circumstances what opinions discussing plaintiff's physical limitations the ALJ relied upon to formulate his RFC. By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand.").

At the consultative examination, Plaintiff described activities to Dr. Ling that are largely consistent with what he testified to being able to do at his hearing. For example, at the consultative examination, Plaintiff said that he could occasionally microwave food but his wife did the cooking, cleaning and laundry; at his hearing, he said he can cook but cannot lift heavy pots, can push a vacuum, and can do laundry but cannot lift the load to switch it between machines. Tr. 52-54; 442-43. Dr. Ling opined that Plaintiff had marked limitations to prolonged standing, walking, bending at the waist, twisting at the waist, lifting, and carrying secondary to his low back pain. Tr. 445. Dr. Ling's assessment was supported by her physical exam which found very limited range of motion in Plaintiff's spine, consistent with the findings of Plaintiff's treating providers post-SCS implantation that Plaintiff still experienced baseline axial low back pain. Tr. 444, 451, 517, 522, 530. Thus, Dr. Ling's opinion was largely consistent with the record and Plaintiff's testimony, contrary to the ALJ's statement that Dr. Ling's opinion was "inconsistent" with both "the

claimant's reported activities of daily living" and with Plaintiff's testimony that he could lift and carry 20 pounds and walk a quarter mile. Tr. 26. Accordingly, the ALJ's decision to give Dr. Ling's opinion limited weight was not supported by substantial evidence.

Even if it had been appropriate for the ALJ to discount the opinion of Dr. Ling, doing so left the ALJ only with medical opinions which failed to address Plaintiff's functional capacity, and which the ALJ had already given little or limited weight. This kind of evidentiary gap requires remand. *Bayer v. Comm'r of Soc. Sec.*, No. 19-CV-0009MWP, 2020 WL 3481451, at *5 (W.D.N.Y. June 26, 2020); *Garrett*, 2019 WL 2163699, at *5; *Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) ("Regardless of whether the ALJ properly discounted this opinion, his rejection of the only physical medical opinion in the record created an evidentiary gap that requires remand."); *see Duncan v. Comm'r of Soc. Sec.*, No. 18-CV-369-FPG, 2020 WL 1131219, at *3-4 (W.D.N.Y. Mar. 9, 2020) (remanding because the ALJ explicitly weighed five medical source opinions and came to an RFC determination that "failed to rely on any medical opinion that could bridge the gap between clinical findings and specific functional limitations"). This error alone requires remand.

Furthermore, with no medical opinion to support his RFC determination, the ALJ's analysis relies primarily on a mischaracterization of the daily activities Plaintiff can complete. The ALJ analyzed a series of activities Plaintiff purportedly could do without making any clear connection to Plaintiff's RFC. For example, Plaintiff's ability to ride a bike was referred to once in a 2013 treatment note by N.P. Moore which stated he was cleared to ride a bike but that sitting was still uncomfortable for him. Tr. 394. The ALJ's reference to Plaintiff's return to hunting comes from a single psychiatric treatment record but omits consideration of the next line in the record where Plaintiff stated that hunting left him in pain. Tr. 455.

The ALJ next moved to the activities Plaintiff testified about performing, such as golf, travel, cleaning, and doing laundry. There is no indication in the record that these daily activities, as Plaintiff performed them, lend support to the RFC determination. Tr. 27. To the contrary, these activities were either recommended by his doctors as good exercise for his back or performed in a limited capacity. Tr. 51. For example, Plaintiff's doctor recommended he start golfing to introduce more walking into his exercise routine, however Plaintiff testified he could only take half swings and had to use a pushcart. Tr. 51-52, 54. The ALJ correctly noted that Plaintiff's recent travel to Alaska for a family wedding did not include participation in other activities such as hiking but still concluded that the long trip and plane ride were "slightly inconsistent with full disability." Tr. 27. The ALJ also broadly stated that Plaintiff was actively involved with cleaning and doing laundry; however, Plaintiff testified that he was limited mainly to pushing a vacuum cleaner when cleaning the house and was unable to lift laundry to switch it between machines. Tr. 52.

It is well settled that "[t]here is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Henderson v. Berryhill*, 312 F. Supp. 3d 364, 370 (W.D.N.Y. 2018) (quoting *Harris v. Colvin*, 149 F. Supp. 3d 435, 444-45 (W.D.N.Y. 2016)); *see also Fellner v. Comm'r of Soc. Sec.*, No. 18-CV-286S, 2019 WL 4783847, at *5 (W.D.N.Y. Oct. 1, 2019) (remanding for improper discounting of plaintiff's testimony because plaintiff's activities, such as cycling and swimming, were more limited than ALJ indicated and were performed on advice of physicians to alleviate back pain).

The ALJ's attempt to demonstrate Plaintiff's health through his participation in various activities mischaracterizes both the medical record and Plaintiff's testimony. Essentially, the ALJ focused on Plaintiff's ability to endure pain in order to attend an important family function or participate in exercise that would help alleviate, though not eradicate, the symptoms of his

8

impairment. In doing so, the ALJ mischaracterized the activities Plaintiff was able to perform to his disadvantage and made no connection to Plaintiff's ability to work. *Mecklenburg v. Astrue*, No. 07-CV-760, 2009 WL 4042939, at *7-8 (W.D.N.Y. Nov. 19, 2009) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working" (quoting *Nelson v. Bowen*, 882 F. 2d 45, 49 (2d Cir. 1989)). As the ALJ "clearly misunderstood or exaggerated" Plaintiff's ability to perform daily activities in a way which "significantly altered and influenced" the RFC determination, remand is appropriate. *Henderson*, 312 F. Supp. at 370.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 20) is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 22, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court